UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE
CIVIL ACTION NO. 7:17-cv-00132-KKC

K.D., by her guardians,
RAYMOND DOTSON and RACHELLE HAIRSTON — PLAINTIFFS

VS:

JERRY SWAFFORD, in his individual capacity;
THE PIKE COUNTY BOARD OF EDUCATION,
REED ADKINS, in his individual capacity; and
MARK GANNON, in his individual capacity — DEFENDANTS

INDEX


| Name of Witness: OFFICER JOSHUA DAVID TINCHER | Page Number |
| --- | --- |
| Caption and Appearances | 1 - 2 |
| EXAMINATION By Mr. Shaw | 3 - 8 |
| EXAMINATION By Mr. Owsley | 9 - 13 |
| EXAMINATION By Mr. Thompson | 13 |
| RE- EXAMINATION By Mr. Shaw | 14 - 15 |
| Reporter's Certificate | 16 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE
CIVIL ACTION NO. 7:17-cv-00132-KKC

K.D., by her guardians,
RAYMOND DOTSON and RACHELLE HAIRSTON PLAINTIFFS

VS:

JERRY SWAFFORD, in his individual capacity;
THE PIKE COUNTY BOARD OF EDUCATION,
REED ADKINS, in his individual capacity; and
MARK GANNON, in his individual capacity DEFENDANTS

---

DEPOSITION OF
OFFICER JOSHUA DAVID TINCHER

---

The deposition of **OFFICER JOSHUA DAVID TINCHER** was taken pursuant to Second Amended Notice to Take Deposition on Thursday, May 10, 2018, at the Pike County Judicial Center, Jury Assembly Room, Pikeville, Kentucky. Said deposition to be used as evidence for and on behalf of the Defendant, Mark Gannon, at the trial of this action, and any and all other purposes permitted under the Federal Rules of Civil Procedure.

Plaintiffs were represented by counsel, Hon. Ryan McCune Donovan, of Bailey Glasser LLP, 209 Capitol Street, Charleston, WV, 25301.

Defendant, Jerry Swafford, was represented by counsel, Hon. Max K. Thompson, of Smith Thompson PLLC, P.O. Box 1079, Pikeville, Kentucky, 41502.

Defendants, Pike County Board of Education and Reed Adkins, were represented by counsel, Hon. Michael A. Owsley, of English Lucas Priest & Owsley, LLP, P.O. Box 770, Bowling Green, Kentucky, 42102-0770; and Hon. Neal Smith, Pike County Board of Education, 316 South Mayo Trail, Pikeville, Kentucky, 41501.

Defendant, Mark Gannon, was represented by counsel, Hon. Jonathan C. Shaw, of Porter Banks, Baldwin & Shaw, PLLC, P.O. Drawer 1767, Paintsville, Kentucky, 41240.

**********************************************

**OFFICER JOSHUA DAVID TINCHER,** the witness, after first being duly sworn, was examined and states as follows:

EXAMINATION

By Mr. Shaw

Q1 Officer Tincher, could you state your full name for the record, please?

A Joshua David Tincher.

Q2 And Officer Tincher, how long have you been a certified police officer?

A Since 2013.

Q3 2013? Did you go through the Academy?

A Yes, sir; West Virginia State Police Academy.

Q4 Any other training or certifications after your, I guess, initial officer training and officer certification?

A. We take certification classes every year, at least 16 hours.

Q5 Other than just the -- I guess in West Virginia, do you have different levels of police training?

A No, sir.

Q6 Are you certified in accident reconstruction, certified in --

A I'm advanced roadside impairment for driving intoxicated and -- yeah. That's it.

Q7 In Kentucky, you know, you do computer forensic. There's all sorts --

A Yeah.

Q8 -- you know, things you can be certified in. So, you're a road patrolman, is that --

A Yes, sir.

Q9 And have been since 2013.

A Um hmm.

Q10 Where are you from?

A Williamson.

Q11 Were you born and raised in Williamson?

A Yes, sir; I was born in South Williamson, raised in Williamson.

Q12 Where did you attend high school at?

A Williamson High School.

Q13 Did you ever attend high school in the Pike County School District?

A No, sir.

Q14 You have been identified as a witness by the plaintiff in this case and what was stated in the Rule 26 disclosures is that "Officer Tincher will testify concerning his personal knowledge of Mr. Swafford's misconduct." Do you know Jerry Swafford?

A No, sir.

Q15 Do you know anything about any misconduct of Jerry Swafford?

A I know he got arrested for having sex with younger girls. I don't know any details about the case or --.

Q16 In October of 2016, where would you have been working?

A I would've been employed with Williamson Police Department.

Q17 Do you know Cindy Anderson?

A Yes, sir.

Q18 How long have you known Cindy Anderson?

A Probably about eight or nine years.

Q19 How do you know Miss Anderson?

A I taught at a Christian school and her daughters attended there; and she's also married to my wife's -- or my ex-wife's half-brother, stepbrother. Okay, there we go, yeah.

Q20 Miss Anderson has testified that I guess in October of 2016 on a Friday that maybe she had contacted you about a high school party, something of that nature?

A Yes, sir. I was actually off at the time injured from a accident at work and, she contacted me -- don't remember the exact details; it mighta been Facebook, mighta been my cellphone, I don't remember which one. Either one, it was a call either from Facebook or

cellphone number and she advised me that a guy worked at Belfry High School -- I'm not sure what his employment was -- was giving underage girls weed and alcohol in trade for sleeping with them, or having parties and having them come to the house and trying to sleep with them. She said that she wanted -- said she wanted to know if I could help stop it. I informed her that I was injured and I told her also Chattaroy would've been out of my jurisdiction at the time; that she needed to contact State Police or Deputies; and I told her that I would contact -- try and contact the Sheriff's Office as well. I have a brother-in-law on the Sheriff's Office, told him try and see if he could patrol through the area, Chattaroy, that night see if he seen anything going on, a lotta cars at a house or anything 'cause it was supposed to been up Howard Hollow and Howard Hollow is pretty much one way in, one way out.

Q21 Do you know whether or not she contacted the police in Chattaroy or if she contacted West Virginia State Police after she talked to you?

A It woulda been the Deputy Sheriffs or the State Police that she woulda contacted.

Q22 I mean, do you know one way or another whether or not she --

A No, sir.

Q23 -- contacted them?

A No, sir.

Q24 Did you contact the Sheriff's Office?

A I messaged my brother-in-law and told him keep an eye out, like I said, see if there was a lot of traffic flow up there or anything like that.

Q25 Did you get a report back as to what he may have observed or if any officers did patrol or anything of that nature?

A No, sir.

Q26 I think you testified a second ago that Chattaroy was outta your district --

A Yes, sir.

Q27 So, even if you were on patrol, you couldn't patrol in Chattaroy 'cause you didn't have jurisdiction.

A Correct.

Q28 Do you recall anything else about the conversation with Miss Anderson?

A She said that -- I can't remember if she said she was gonna contact the principal or had contacted the principal. I can't give testimony to that to be exact.

Q29 After that conversation with Miss Anderson, did you have any subsequent contact with Miss Anderson about this issue?

A I don't believe so.

Q30 Did you talk to anyone about Miss Anderson's call after Miss Anderson called you?

A Mr. Donovan contacted me when I's back at the Williamson Police Department, um hmm.

Q31 Did you give Mr. Donovan any statements -- oral or written statements about what had occurred?

A We spoke on the phone.

Q32 Do you know whether or not that conversation was recorded by Mr. Donovan?

A No, sir.

Q33 I mean he didn't tell you he was recording your conversation --

A I don't re' --

Q34 -- or ask for your permission about recording the conversation?

A I very briefly remember the conversation, be honest with you.

Q35 Is there anything, I guess, relevant to this case that was discussed between you and Mr. Donovan that we've not talked about today that you can recall about your conversation with Mr. Donovan?

A No, sir.

MR. SHAW:

Pass the witness.

MR. OWSLEY:

Just a very few. Officer, my name is Mike Owsley and along with Neal Smith, we represent the Board of Education and the Superintendent who have been sued in this matter.

EXAMINATION

By Mr. Owsley

Q1 Miss Anderson has provided her cellphone records --

A Um hmm.

Q2 -- and I just have a couple questions about calls you -- I think you received.

A Um hmm.

Q3 Is your cellphone number (304) 928-5353?

A Yes, sir.

Q4 Her records and her testimony show that she called you on October the 14th of 2016 --

A Um hmm.

Q5 -- at 1:38 p.m. --

A Um hmm.

Q6 -- and the call lasted nine minutes.

A Um hmm.

Q7 It also shows that she placed a second call that day to the same number and that call was at 1:50 p.m.; and that call lasted 21 minutes.

A Um hmm.

Q8 Do you remember two calls with her that afternoon?

A I know we had talked. Mighta been two calls, I mean if the records show, then, yeah, it was two calls.

Q9 Do you have any recollection of why she would've called you back a second time, or did you call her at either of those occasions?

A I -- I don't know if I called her or if she called me but she was also just talking about like not -- she was talking about her daughters were doing and stuff like that. Like it wasn't --

Q10 Things unrelated to --

A Yeah.

Q11 -- Mr. Swafford.

A Yeah.

Q12 And as I understand it, you don't have any personal knowledge of the incidences that went on at Mr. Swafford's house that evening.

A No, sir.

Q13 You just know that he was arrested but you don't know the details of the arrest or the conviction.

A Correct. I will go ahead and tell you, I didn't know that Mr. Gannon was the principal. I wasn't sure what I was showing up for. I didn't know he was the principal until Billy McCoy told me outside who Mark Gannon was.

Q14 Did you know Mark Gannon at all?

A No, sir.

Q15 So, when she said she either was going to or already had contacted the principal when you spoke with her on October 14, you didn't know who she was talking about.

A No, sir. I -- I told her, you know, if Belfry High School had an employee like that, surely, they gotta get rid of him; and that something needed to be done.

Q16 And you told her to contact either the State Police or the Sheriff's Department.

A Yes, sir; there's not a city department there.

Q17 So, the two law enforcement agencies that had jurisdiction over this matter would be the West Virginia State Police or the Sheriff's Department.

MR. DONOVAN:

Object to the form. You can answer.

Q17 [continued] Is that right?

A If the crime's been committed in West Virginia, yes, sir.

Q18 You did understand from Ms. Anderson that the party was taking place at Mr. Swafford's house.

A Yes, sir.

Q19 And that Mr. Swafford's house was in West Virginia?

A Yes, sir.

Q20 Did you say that after the call with Ms. Anderson you did something? I kinda lost that in translation.

A I think -- I believe I called -- I'm not sure if I called or texted my brother-in-law. He's a deputy on the Mingo County Sheriff's Office. I think I texted him and then like when I got his attention, I called him 'cause that's normally how I deal with him. 'Cause me and him, we never know when one's sleeping and when one's awake, and I told him to keep an eye out if there was a lot of traffic down there 'cause I wasn't sure where he lived. I just knew she said Howard Hollow and Howard Hollow, like I said before, it's one way in and one way out.

Q21 What's your brother-in-law's name?

A Blake Sipple.

Q22 How does he spell that last name?

A S-i-p-p-l-e.

Q23 Did you ever speak with Mr. Sipple later about what they did or didn't do about keeping an eye out?

A No, sir. I be honest with you, so many cases come and go, it's just --

Q24 Hard to keep track of.

A Yeah.

MR. OWSLEY:

That's all I have; thank you for your time.

MR. THOMPSON:

I just have a quick question.

EXAMINATION

By Mr. Thompson

Q1 Did you know who Jerry Swafford was before Ms. Anderson called you?

A No, sir.

Q2 Have you done any investigation of him since that time?

A No, sir; I wouldn't know if he was sitting in this room.

MR. THOMPSON:

Thank you, that's all I have.

MR. DONOVAN:

I have nothing, just thank you.

MR. SHAW:

I've got one quick followup.

RE-EXAMINATION

By Mr. Shaw

Q1 Would you have by any chance prepared an Incident Report or anything of that nature --

A No, sir.

Q2 -- based upon the call?

A No. Like I said, I's off duty and --

MR. SHAW:

I understand, I's just making sure.

A -- calls come like that all the time; people hit you on Facebook or stop me --

Q3 Let me ask you one question. Do you usually work nights?

A Yes, sir.

Q4 You do? Do you have to go to many homes where high school parties are taking place?

A Not very often, no.

Q5 Have you been to homes where high school parties are taking place and tried to bust up the party?

A No.

MR. SHAW:

Thank you.

MR. OWSLEY:

Thank you.

MR. DONOVAN:

Thank you.

(DEPOSITION CONCLUDED)

STATE OF KENTUCKY

COUNTY OF PIKE

I, Shirley S. Hensley, Notary Public in and for the State of Kentucky at Large, whose commission as such will expire March 25, 2021, do hereby certify that the foregoing deposition of **OFFICER JOSHUA DAVID TINCHER** was taken at the time, place, and for the purposes stated in the caption hereto.

I further certify that said taking was pursuant to Amended Notice To Take Deposition; that appearances were as stated in said caption; that the witness was first duly sworn by me before testifying; that said testimony was taken by me in shorthand notes and by tape-recording and later reduced to typewritten material herein, which is a true, full, complete and accurate transcript thereof; that the parties did not request the reading and signing of the deposition of said witness.

IN TESTIMONY WHEREOF, I have hereunto set my hand at Pikeville, Kentucky, this 24th day of May, 2018.

Shirley S. Hensley

SHIRLEY S. HENSLEY, REPORTER