```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF KENTUCKY
 2

 3   K.D.,

 4        Plaintiff,

 5   v.                      Civil Action No. 7:17-cv-132-KKC

 6
     JERRY SWAFFORD, in his individual capacity;
 7   THE PIKE COUNTY BOARD OF EDUCATION,
     REED ADKINS, in his individual capacity; and
 8   MARK GANNON, in his individual capacity.

 9        Defendants.

10

11

12

13        The deposition of KEVIN DESKINS, taken upon

14   oral examination, pursuant to notice and pursuant to the

15   Federal Rules of Civil Procedure, before Kimberly

16   Wooten, Court Reporter and Notary Public in and for the

17   State of Kentucky, Wednesday, May 17, 2018, at the Pike

18   County Board of Education, 316 Mayo Trail, Pikeville,

19   Kentucky.

20

21

22                    REALTIME REPORTERS
                        713 Lee Street
23                  Charleston, WV   25301
                        (304)344-8463
24                  www.realtimereporters.net
```

```
 1                     APPEARANCES

 2   On behalf of K.D.:

 3       Ryan McCune Donovan, Esquire
         William Flynn, Legal Assistant
 4       Bailey & Glasser, LLP
         209 Capitol Street
 5       Charleston, WV  25301
         (304) 345-6555
 6       rdonovan@baileyglasser.com

 7   On behalf of Mark Gannon and Reed Adkins:

 8       Jonathan C. Shaw, Esquire
         Porter, Banks, Baldwin & Shaw, PLLC
 9       327 Main Street
         Paintsville, KY  41240
10       606) 789-3747
         jshaw@psbb-law.com
11
     On behalf of the Pike County Board of Education:
12
         Neal Smith, Esquire
13        General Counsel, Pike County Board of Education
         316 South Mayo Trail
14       Pikeville, KY  41501
         (606) 433-9208
15       neal.smith@pike.kyschools.us

16       Michael A. Owsley, Esquire
         English, Lucas, Priest & Owsley, LLP
17       1101 College Street
         Bowling Green, KY  42102
18       (270) 781-6500
         mowsley@elpolaw.com
19
     On behalf of Jerry Swafford:
20
         Mark K. Thompson, Esquire
21       Smith Thompson & Kennedy, PLLC
         140 Scott Avenue
22       Pikeville, KY  41501
         (606) 432-2156
23       maxthompson@setel.com

24
```

EXAMINATION INDEX

KEVIN DESKINS

Examination by Mr. Donovan                                Page  4
Examination by Mr. Shaw                                   Page 23
Examination by Mr. Smith                                  Page 27

EXHIBIT INDEX

DEFENDANTS EXHIBITS

No. 1   Sworn Declaration of Carla Walker                 Page 18

1  jump in and ask you another question, and if you could
2  do the same for me.
3      A.  Yes, sir.
4      Q.  And if we get too out of line with that,
5  she'll remind us.
6          The only other thing, I think we're only going
7  to be here a few minutes today, but if for some reason
8  you would want to take a break, you can absolutely do
9  so.  I would only ask that if I've started a question,
10 you let me finish it and you answer before we take that
11 break.
12     A.  Okay.
13     Q.  Is that fair?
14     A.  Yes, sir.
15     Q.  Okay.  Very quickly, and I won't take you
16 through the whole thing we normally do, but are you a
17 teacher at Belfry High School?
18     A.  Yes, sir.  This is, I believe, my 15th year in
19 education, this is my 10th year at Belfry High School.
20     Q.  Where were you before Belfry?
21     A.  The first two years, I was at Pike County
22 Central; and then I spent two years, as well, at Belfry
23 Middle School; and then from there, I moved to the high
24 school.

1  I was, you know, I didn't hear about it.  I walked in
2  and I remember, you know, like -- I guess, I can't
3  remember if I talked to Coach Comer(ph) or whatever, and
4  he kind of showed me the picture of the news article or
5  whatever, and it was, you know.
6          And then I remember just as the kids come in,
7  I was trying to -- to get them back on task and get them
8  what, you know, back into what we were doing.  So, you
9  know, if there were any kind of discussions about any of
10 that stuff, it would have been very limited as far as
11 what we would have done, just because, I just, you know,
12 I don't take a lot of time for stuff like that in class,
13 especially, you know, when there was -- you know, I
14 didn't know any of the details necessarily.
15      Q.   Were you surprised to hear about --
16      A.   I was shocked.  You know, I spent -- you know,
17 I spent a lot of time at that school coaching sports or
18 whatever, and, you know, I have a young daughter and,
19 you know, there was, you know, multiple times that I --
20 you know, say we was like at the Mountain Boy School
21 Classic, and I remember having to go back downstairs and
22 leaving my daughter, you know, at the table.  She was
23 sitting there with Jerry or whatever and, you know, he
24 said that he'll bring her back down and, you know, there

1  was never a thought about it, you know.
2          Then when the situation occurred or whatever,
3  it's just, you know, when I reflect back, I never really
4  had that, that fear about that, or -- you know, because,
5  you know, I guess somewhat I'm too trustworthy or
6  trusting or whatever, but that's...
7      Q.   Okay.  We've spoken to C▓▓▓ W▓▓▓▓▓ about this
8  case, and she gave us a written statement that she
9  executed under oath, and we have shared this statement
10 with the Board of Education.  Have you seen it?
11     A.   I haven't seen it, no, sir.
12     Q.   Okay.  In her declaration, Ms. W▓▓▓▓▓ says
13 that on October 16th, she was a student at Belfry High
14 School; is that accurate?
15     A.   That's accurate, yes, sir.
16     Q.   She also said that she was in Mr. Deskins
17 classroom at Belfry High School and word started to go
18 around and that Jerry Swafford has been accused of
19 sexually assaulting K.D. at a party that weekend.
20          Is that accurate?
21     A.   Yes.
22     Q.   Is there another Mr. Deskins?
23     A.   No.
24     Q.   Just checking.

```
 1      A.    Certainly.  No.
 2      Q.    C███ says that, and I'm quoting her statement
 3  here, "When Mr. Deskins heard the news, he seemed very
 4  upset."
 5            Is that accurate?
 6      A.    Yeah, that's very accurate.
 7      Q.    And said, quote, "We all knew something like
 8  this was going to happen."
 9            Is it possible that you said that?
10      A.    In that context, no.
11      Q.    Well, is it possible that you said those
12  words?
13      A.    Who is "we?"  I don't understand that
14  statement.
15      Q.    Sure.  We can --
16      A.    Right, right, that's what I'm saying --
17      Q.    -- for now, let's stick to the question --
18      A.    That's what I'm saying, like assuming -- I
19  can't be a hundred percent positive, that does not sound
20  like my approach that I would have taken in class at
21  that time.
22            Understanding that I was shocked, in awe at
23  that.  Yeah, absolutely I was, it was, you know,
24  especially the moment teaching, you know, like a
```

1 criminal profiling or whatever, you know, I'm pretty
2 good at that kind of stuff, you know, just
3 understanding, I -- I didn't get that. If I did say
4 that statement, as far as like -- can you say it to me
5 again? I'm sorry, I'm not --
6     Q.   Sure. "We all knew something like this was
7 going to happen."
8     A.   That just, it don't sound like the right
9 context. If it was maybe like --
10         MR. SHAW: Here's a copy of the statement.
11         MR. DONOVAN: Oh, I'm sorry.
12         (Exhibit No. 1 marked for identification.)
13     A.   I will never say that it's not possible. If I
14 said something like that, it wasn't necessarily the
15 intention, it was, you know, sometimes I generalize a
16 whole lot, you know. And I often spend time thinking,
17 like it doesn't surprise me, I shouldn't ever be
18 surprised as far as what was occurring, you know, like
19 the trusting of people and the judgment. But as far as,
20 I don't think that's a fairly accurate statement that I
21 would say.
22     Q.   Okay.
23     A.   I just, it don't -- when I read that, it just
24 doesn't appear or sound like that's the way that I

1   approached that.  And all I really remember is my
2   general approach of, of kind of consoling kids, kind of
3   getting them to chill out and trying to maybe take their
4   mind somewhere else.
5           Of course, she probably did see that, because
6   I -- it was an early morning class.  So when I found
7   out, like I said, I knew nothing prior to that moment,
8   it kind of whigged me out little bit -- more so over my
9   daughter kind of being around him, opposed to actually
10  the situation.  Just kind of I reflected back on all the
11  times that, you know.
12          And of course maybe I felt somewhat of the
13  guilt, like maybe I should have known, you know.  Like
14  just where I've studied law and justice, and I've
15  studied psychology and sociology, but it just -- I guess
16  that's kind of how, maybe how I felt.
17          And I don't know, maybe I said something like
18  this in a sense, and maybe the way that she took it was
19  a little bit different -- because sometimes kids take
20  the things that you say I guess a little bit too
21  literally -- but, you know, I don't feel like that, that
22  was something that I -- the intent of it, I'll just, I
23  don't know, it just... I don't know, I just...
24      Q.   Sure.  And I appreciate your candid answer to

1  that, and, you know, you're not on trial --
2     A.   Right, absolutely not.
3     Q.   Nobody is accusing you.
4     A.   Trying to be as forward, like help you out
5  with all the details that I can.
6     Q.   Appreciate that.  So a lot to process there,
7  but is it safe to say then that you think it's possible
8  that you said that and she took it out of context?
9          MR. SMITH:  Objection.  I think he's already
10 answered that question, he said he did not think that
11 was something he would say.
12    Q.   You can answer that.  We can preserve the
13 objections, but they don't need to be speaking
14 objections.  You can answer.
15    A.   I don't feel -- no, I don't feel like I said
16 that, if -- the way that it's quoted, I don't feel like
17 I've said that in that context.  I don't know why I
18 would say "we" all knew, who -- include in that, I don't
19 feel like that's something that I've said.
20    Q.   Okay. Do you think that C███ W█████ is
21 lying?
22    A.   No.  But just with my, you know, working with
23 kids or whatever, kids hear what they want to hear, so
24 oftentimes they -- you know, I never remember having a

1  parties at his home during which he plied children with
2  drugs or alcohol and sexually abused them.  The Board
3  was aware of the parties and other misconduct by
4  Swafford and did absolutely nothing.
5              You have been identified as a witness in this
6  case by the plaintiff as knowing something about
7  Mr. Swafford's misconduct.  Had you ever heard that?
8       A.   No.
9       Q.   Were you ever aware of any parties --
10      A.   No, sir.
11      Q.   -- at his house where he supplied alcohol or
12 drugs and allegedly sexually abused anyone --
13      A.   No, sir.
14      Q.   -- before the incident that occurred on the
15 weekend of October 15, 2016?
16      A.   No, sir.
17      Q.   Okay.  You're also identified as a witness as
18 having personal knowledge of similar misconduct by Board
19 employees and knowledge of Mr. Swafford's misconduct and
20 similar misconduct by other Board employees.
21              Do you know of any other Board employees that
22 on a regular basis would have plied students with drugs
23 and alcohol and sexually abused them?
24      A.   No, sir.

CERTIFICATE OF COURT REPORTER:

I, Kimberly Wooten, a Notary Public and Professional Reporter within the State of Kentucky, duly commissioned and qualified, do hereby certify that the foregoing deposition was duly taken by me, the said witness having been by me first duly sworn.

I do further certify that said proceedings were correctly taken by me in stenotype notes, that the same were accurately transcribed out in full and true record of the testimony given by said witness to the best of my ability.

I further certify that I am neither counsel for, nor related to or employed by, any of the parties hereto or financially interested in the action.

Given under my hand this 27th day of May, 2018.

*Kimberly Wooten*
Kimberly Wooten
Professional Reporter/Notary Public

My commission expires: July 20, 2020