**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**

| | |
|---|---|
| **K.D.**, | **CIVIL ACTION NO. 7:17-132-KKC** |
| **Plaintiff,** | |
| **V.** | **MEMORANDUM OPINION AND ORDER** |
| **JERRY SWAFFORD, THE PIKE COUNTY BOARD OF EDUCATION, REED ADKINS and MARK GANNON,** | |
| **Defendants.** | |

**\*\*\* \*\*\* \*\*\***

This matter originates from the sexual assault of K.D. by her school's plant superintendent and custodial supervisor, Jerry Swafford. (DE 1; DE 144 at 6). Today, the Court considers the defendants' motions for summary judgment and motion to dismiss, for which K.D. has submitted one consolidated response. (DE 143; DE 163; DE 164; DE 165; DE 167). The Court also considers K.D.'s motion to sanction Defendant Mark Gannon. (DE 148).

While there is no doubt that the plaintiff suffered a tragic injury, the law does not permit her to seek a remedy from the Pike County Board of Education, Reed Adkins, or Mark Gannon. Accordingly, for the reasons that follow, the Pike County Board of Education's, Reed Adkins', and Mark Gannon's motions for summary judgment are **GRANTED**. (DE 164; DE 163; DE 143). Jerry Swafford's motion to

dismiss/for summary judgment is **DENIED**. (DE 165). And K.D.'s motion for sanctions is **DENIED**. (DE 148).

## I. FACTUAL BACKGROUND

The following facts are undisputed.

Defendant Swafford was employed by the Pike County Board of Education as a janitor at Belfry High School, where K.D. was a student. (*See, e.g.*, DE 167 at 1). On Saturday, October 15, 2016, Swafford threw himself a birthday party at his residence, to which Belfry High School students were invited. (DE 163–1 at 2). At the party, Swafford served K.D. an alcoholic beverage, and she passed out. *Id.* Swafford then sexually assaulted K.D. in a bedroom. As a result, Swafford pleaded guilty to criminal sexual assault charges and is now serving a prison sentence in West Virginia. (*Id.* at 2–5; *see also* DE 144 at 17).

Cindy Andersen, a Belfry High School parent, attempted to stop Swafford's party before it began. Andersen became aware of the party plans on Friday, October 14, 2016, by reading text messages on her daughters' phones and through information shared by two male classmates[1] of her daughters'. *Id.* at 3.[2] Concerned about Swafford's behavior, Andersen telephoned the Pike County School Board, Belfry High School, and a policeman. *Id.* at 4. Andersen first spoke with Principal Gannon of Belfry High School, who scheduled a meeting with Anderson for the morning of October 17, 2016, the Monday after the party. *Id.* Gannon did nothing, however, to prevent the party from occurring. *Id.* at 4–5.

---

[1] Anderson is the mother of two minors and an adult. She testified that the high school boys also showed her a photograph of her adult daughter—who had only recently graduated from Belfry High School—wrapped in a towel, with Swafford sitting in the background of the image. This image, however, was not produced in discovery despite requests for production. (DE 163-1 at 3–4).

[2] Anderson testified that text messages on her daughter C.H.'s phone indicated that Swafford had previously provided both of her minor daughters with alcohol and marijuana. These text messages, however, were not produced in discovery despite requests for production. The allegation remains disputed. *Id.* at 3.

Although Andersen never spoke with Superintendent Adkins, she did speak with Nee Jackson, a member of the Pike County Board of Education, that same Friday afternoon. *Id.* at 5. Jackson counselled Andersen to meet with Gannon and to contact the police. Jackson, too, took no measures to stop the party. *Id.*

The following night, on Saturday, October 15, 2018, Swafford sexually assaulted K.D. (*Id.*; *see also* DE 144 at 17).

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to defeat a summary judgment motion, "[t]he nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Summary judgment must be entered if, "after adequate opportunity for discovery," a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 940 (6th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted)).

## III. ANALYSIS OF SUMMARY JUDGMENT MOTIONS

### A. Count I: 42 U.S.C. § 1983

#### i. The Pike County Board of Education

K.D. asserts that the Pike County Board of Education violated her Fourteenth Amendment right to be free from sexual abuse at the hands of a public school employee. (DE 1 at 6 ("COUNT I")). "[A] schoolchild's right to personal security and

to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee." *Doe v. Claibourn Cnty.*, 103 F.3d 495, 506 (6th Cir. 1996). A violation of this right may give rise to a *Monell* claim against a school board. *Id.* at 507 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Such a claim, however, may not rest on *respondeat superior* as a theory of recovery. *Id.* Under *Monell*, a school board "cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." *Id.* (citing *Monell*, 436 U.S. at 690–91).

"A municipal liability claim against [a] School Board must be examined by applying a two pronged inquiry: (1) Whether the plaintiff has asserted the deprivation of a constitutional right at all; and (2) Whether the County and/or the School Board is responsible for that violation." *Id.* at 505. It is undisputed that Swafford, a Board employee, violated K.D.'s right to be free from sexual assault. As such, the first prong of the inquiry is satisfied. K.D., however, has not produced any evidence on the second prong: that the Board tolerated a custom or officially executed a policy that caused the violation of her rights. *Id.* at 507 (citing *Monell*, 436 U.S. at 690–91).

In her Section 1983 claim against the Board, K.D. asserts that there was an unconstitutional custom of failing to act to prevent sexual abuse. (DE 1 at 6 ⬜ 39 (emphasis added)). To state a claim against the Board under an "inaction" theory, K.D. must establish:

> (1) the existence of a *clear and persistent pattern* of sexual abuse by school employees;
> (2) *notice or constructive notice* on the part of the *School Board*;

(3) the School Board's tacit approval of the unconstitutional conduct, such that their *deliberate indifference* in their failure to act can be said to amount to an *official policy of inaction*; and

(4) that the School Board's custom was the "moving force" or *direct causal link* in the constitutional deprivation.

*Claiborne Cnty.*, 103 F.3d at 508 (emphasis added) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)); *see also Thorpe v. Breathitt Cnty. Bd. of Educ.*, 8 F. Supp. 3d 932, 938–39 (E.D. Ky. 2014).

Here, K.D. does not advance evidence to show "that the School Board, as an official policymaking body, had a 'custom' that reflected a deliberate, intentional indifference to the sexual abuse of its students." *Claiborne Cnty.*, 103 F.3d at 508. The undisputed facts of this case do show that there have been at least five (5) employees of the Pike County School District who have committed or been accused of serious sexual misconduct against students within the ten (10) years prior to the filing of this suit. (*See, e.g.*, DE 164-1 at 14–16). For all of these, however, the Board has taken appropriate corrective measures, up to and including termination:

(1) In April 2008, Lincoln Bentley, a teacher at East Ridge High School, was terminated after being arrested for asking a minor to expose her breasts in exchange for a higher grade, although he was later found not guilty;

(2) In 2009, Frances Launa Stanley, a teacher at Belfry High School, was accused of having an affair with a student. She was suspended, reported to the Educational Professional Standards Board, and reassigned to a different school;

(3) In October 2012, Paige Danielle Johnson, a teacher at Elkhorn Elementary, resigned and was reported to child protective services after she was accused of making inappropriate advances toward an Eighth Grader;

(4) In 2015, Laura Barker, Assistant Principal of Pike County Central High School, was terminated after illicit photographs of her were distributed in the high school; and

(5) In October 2015, Kenneth Brown, a bus driver for East Ridge High School and Elkhorn Elementary School, was terminated after being charged with raping a minor.

(*Id.*; DE 175 at 11). Not only did the Board adopt and maintain an official anti-harassment policy, it took appropriate action in each case of employee misconduct.

(DE 164-1 at 14–16; DE 175 at 11; DE 175-16 at 2 □ 13). K.D. has put forth no evidence that the Board customarily ignored the sexual abuse of its students with the force of law. *Claiborne Cnty.*, 103 F.3d at 507 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).

K.D. has also not shown that the Board acted with deliberate indifference in failing to act to prevent her abuse by Swafford. Here, K.D. relies on contradictory testimony provided by Jerry Roberts, a bus driver and former janitor at Belfry High School, who alleges that he observed Swafford masturbating on school property. (*See, e.g.*, DE 135 at 33–34). In an unsworn recording taken by Ryan Donovan, plaintiff's counsel, prior to the initiation of this litigation, Roberts claimed that he reported the masturbation incident to then-Principal Varney.[3] (DE 168 at 9–10). At both of his depositions, under oath, however, Roberts withdrew this claim as a lie having been made when he was drunk. (DE 135 at 7, 10–12 (Roberts characterizes the statement that he reported the masturbation incident to then-Principal Varney as "drunk man bragging"), 36 (Roberts identifies his statement that he told former principal Varney as "a lie, I did not [tell Varney]."), 44 (Roberts characterizes his statement that he told former principal Varney "a total black lie."); DE 168 at 11 (Q: "Is it still your testimony under oath here today that you did not tell Rod Varney about this incident?" A: "It still is.")). Roberts claims he may have told "several people," but he does not identify with any certainty the people he told. (DE 135 at 34–36). In recanting his initial, unsworn statement, Roberts—under oath—is very clear that he never reported the masturbation incident to then-principal Varney:

> Q: And your testimony to the ladies and gentlemen of the jury, us that you didn't tell anybody in charge of the school that he had done that?

[3] At the time of this alleged incident, Varney, not Gannon, was the principal of Belfry High School. (DE 143-3 DE 170-11; DE 175-9).

A: I did not.

Q: The person . . . you had caught in this compromising position, and you didn't tell on him?

A: I did not.

Q: Why?

A: I didn't. Just didn't. Didn't have a chance, really.

(DE 135 at 46). At another point, Roberts testified:

Q: You didn't tell anybody that was in charge of the school?

A: No.

*Id.* at 49.

Former Principal Varney attests that he was not aware of any information that would indicate that Swafford might pose a risk of sexual assault to students. Specifically, Varney attests that "[n]o one ever reported to me that Mr. Swafford was seen masturbating in his office." (DE 143-3; DE 170-11; DE 175-9). Principal Gannon was also deposed about this event. (DE 132 at 129). Gannon confirmed that if the incident had occurred, it would have been investigated on a District level. *Id.* at 129–130. He is certain that former Principal Varney would have initiated the investigation. *Id.* It is clear, however, that the event was never reported. *Id.* at 129–130. The Board documents each incident of sexual misconduct in its personnel records. (DE 164-1 at 14). There is no record of the masturbation incident in any of the 6,500 files reviewed by fifteen (15) employees over the course of 600 hours. (*Id.*; *see also* 164-24).

As disgusting as this alleged event may be, the evidence of Record—even when viewed in a light most favorable to K.D.—is not enough to establish actual or constructive notice of a risk posed by Swafford as to the Pike County Board of

Education. There is no evidence that then-Principal Varney knew about the event. (DE 143-3; DE 170-11; DE 175-9). There is no evidence that Principal Gannon knew about the event. (DE 132 at 129–130). There is also no record, other than Jerry Robert's unsworn statement, of this event ever even having occurred. (DE 135 at 33–34; DE 168 at 9–10; DE 164-1 at 14; DE 164-24). And, when questioned under oath, Roberts categorized his claim of reporting the incident to then-Principal Varney as "a total black lie." (DE 135 at 44). "[T]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Here, there is simply no evidence to support the proposition that the Board was aware of the masturbation incident or had any notice of a risk of sexual assault posed by Swafford.

K.D. has also failed to demonstrate that Superintendent Adkins acted in a manner that could create Board liability under Section 1983. It is true that the actions of a superintendent may expose a school district to 1983 liability in certain scenarios. *Thorpe v. Breathitt Cnty. Bd. of Educ.*, 8 F. Supp. 3d 932, 940 (E.D. Ky. 2014). Here, however, K.D. has not provided any evidence that Adkins had any idea that Swafford might engage in inappropriate sexual behavior with students. (*See generally* DE 158). More importantly, Adkins was involved in plans to investigate Cindy Andersen's concerns about Swafford before he even learned about the assault. *Id.* at 119. Thus, Adkins' actions cannot be characterized as deliberately indifferent. *Doe v. Claibourn Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996).

K.D. presents only one piece of affirmative evidence that any member of the Pike County Board of Education was aware of Swafford's potential for misconduct: Cindy

Andersen's telephone conversation with Nee Jackson. (DE 163-1 at 5; s*ee also* DE 162 at 16). During this conversation, Andersen told Jackson of Swafford's planned party, and Jackson told Andersen to contact the police and Principal Gannon, who was Swafford's direct supervisor. *Id.* This is hardly evidence of deliberate indifference by the Board or a Board member to a threat posed by Swafford. "'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Claiborne Cnty.*, 103 F.3d at 508. Jackson's recommendation that Andersen contact the police and Gannon may have fallen short of preventing the assault. *Id.* Nevertheless, this recommendation does not establish that the Board was "sloppy, or even reckless"—let alone deliberately indifferent—to a risk of sexual assault posed by Swafford. *Id.*

K.D. suggests that the Board should be held liable under Section 1983 for a failure to properly train its employees. (DE 1 at 7 □ 43; DE 167 at 15–17). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A "municipality's culpability for a deprivation of rights," however, "is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City. v. Tuttle*, 471 U.S. 808, 822–23 (1985)).

K.D. appears to argue that the Board systemically failed to train its employees on how to prevent the sexual assault of students such that it was an official policy opening up the Board to Section 1983 liability. (DE 167 at 15–17).

> A systematic failure to train employees amounts to a custom or policy for which the employer may be subject to § 1983 liability only if such

> failure amounts to deliberate indifference to the rights of persons with whom the employees come into contact. To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [employer] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.

*Savoie v. Martin*, 673 F.3d 488, 495 (6th Cir. 2012) (internal citations omitted). This claim fails. K.D. does not demonstrate that the Board had a history of ignoring abuse or was on notice that training in this area was deficient. Rather, the facts demonstrate that employees accused of sexual assault of any nature were disciplined immediately, with their misconduct reported to the authorities, including the police. (DE 164-1 at 14–16; DE 175 at 11). Further, the Board maintained an official anti-harassment policy. (DE 175-16 at 2 □ 13). "The standard of 'deliberate indifference' is a stringent one and requires proof that the defendants 'disregarded a known or obvious consequence' of their actions." *Sagan v. Sumner Cnty. Bd of Educ.*, 726 F. Supp. 2d 868, 886 (M.D. Tenn. 2010). Here, there is simply no evidence of deliberate indifference to sexual assault by the Board.

Cases that have found otherwise are distinguishable. *See, e.g.*, *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 262 (6th Cir. 2000) (prior cases of severe assault including the stabbing of a student, of which the Board had actual notice, with no Board response other than general scolding); *Thorpe v. Breathitt Cnty. Bd. of Educ.*, 8 F. Supp. 3d 932, 946 (E.D. Ky. 2014) (where the Board had actual notice of prior misconduct that had been disciplined but failed to act to prevent a subsequent assault); *cf. Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360 (6th Cir. 2005) (affirming judgment for the Board even in the presence of actual notice of sexual assault). Here, there is no evidence to support the proposition "that the School Board, as an official policymaking body, had a 'custom' that reflected a

deliberate, intentional indifference to the sexual abuse of its students." *Doe v. Claibourn Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996). For that and all of the above reasons, K.D.'s Section 1983 claim against the Board is dismissed.

### ii. Superintendent Adkins and Principal Gannon

K.D. alleges that Principal Gannon and Superintendent Adkins are individually liable under 42 U.S.C. § 1983 for depriving K.D. of her due process right as a public school student to personal security and bodily integrity. (DE 1 at 7 ⬚ 45). Specifically, K.D. argues that Gannon and Adkins are liable for their "tacit authorization of or knowing acquiescence in Swafford's sexual misconduct against students like K.D." *Id.* at ⬚ 46. K.D. cites to no facts in the Record—and the Court is unaware of facts in the Record—to support her claim that either Adkins or Gannon engaged in conduct amounting to a tacit authorization of abuse. Accordingly, Gannon and Adkins are entitled to summary judgment on these claims.

To hold school administrators individually liable for a constitutional injury caused directly by Swafford, supervisory liability standards apply. *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002) (citing *Doe v. Claibourn Cnty.*, 103 F.3d 495, 513 (6th Cir. 1996)). Under the supervisory liability standard,

> it is not enough for the plaintiff to show that the defendant supervisors were sloppy, reckless or negligent in the performance of their duties. Rather, we said, "a plaintiff must show that, in light of the information the defendants possessed, *the teacher* who engaged in sexual abuse showed a strong likelihood that *he* would attempt to sexually abuse other students, such that the failure to take adequate precautions amounted to deliberate indifference to the constitutional rights of students."

*Id.* (emphasis added) (quoting *Claiborne Cnty.*, 103 F.3d at 513). A supervisor's "liability must be based on 'active unconstitutional behavior.'" *Id.* at 440 (quoting *Shehee v. Luttrell*, 199 F. 3d 295, 300 (6th Cir. 1999)). A supervisor's mere failure to

act is not sufficient. In the absence of supervisors' participation, encouragement, authorization, or acquiesce to sexual assault of students, a supervisor has, as a matter of law, "neither committed a constitutional violation nor violated a clearly established right." *Shehee*, 199 F.3d at 300; *see also Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("[T]o be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct," and "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.").

Here, K.D. argues that Gannon should be held liable under Section 1983 "at a minimum" because he acquiesced in Swafford's offending conduct by retaining Swafford as an employee despite actual or constructive notice of the threat Swafford posed to female students. (DE 167 at 20). There is no evidence in the Record, however, that Gannon knew of *any* questionable activity by Swafford prior to his conversation with Andersen the night before Swafford's party. (*See generally* DE 132). While K.D. makes broad allegations otherwise, her Response to Gannon's individual motion for summary judgment lacks a *single citation* to a fact in the Record supporting her Section 1983 claim against Gannon. (DE 167 at 20–22). Similarly, nowhere in her Response does K.D. respond *at all* to Adkins' motion for summary judgment on her Section 1983 claim against him. (*Compare* DE 163, *with* DE 167; *see also* L.R. 7.1 ("Failure to timely respond to a motion may be grounds for granting the motion."). In sum, K.D. cites to no evidence, and the Court is unaware of any evidence, showing that either Adkins or Gannon 'participated, encouraged, authorized, or acquiesced' to the sexual assault of students. *See Shehee v. Luttrell*, 199 F. 3d. 295, 300 (6th Cir. 1999). For that reason, Adkins' and Gannon's motions

shall be granted, and K.D.'s individual Section 1983 claims against them shall be dismissed.

## B. Count II: Title IX, 20 U.S.C. § 1681

K.D. seeks relief against the Board pursuant to 20 U.S.C. § 1681(a). Specifically, K.D. alleges that the sexual abuse by Swafford was so severe and objectively offensive that it undermined and detracted from her educational experience sufficient to deny her equal educational opportunities in violation of Title IX. (DE 1 at 8 □ 48). Title IX provides that no "person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX is enforceable against school boards through a private right of action for which pecuniary damages are available. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998). *Respondeat superior* is not an available theory for relief. *Id.* at 285. To prevail, K.D. must show (1) that she was sexually abused by Swafford, (2) a school official with sufficient authority had actual notice that Swafford posed a substantial risk of sexual abuse to students, and (3) the Board was deliberately indifferent to that substantial risk. *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005).

It is undisputed that Swafford sexually assaulted K.D. at his birthday party at his home. (DE 144 at 17). For that reason, whether K.D. is entitled to relief under Title IX comes down to whether an appropriate person had actual knowledge of a substantial risk of sexual assault posed by Swafford, and whether the Board acted with deliberate indifference to that substantial risk. For Title IX purposes, an "appropriate person" is "an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser*, 524 U.S. at 281. In Kentucky,

both principals and superintendents are "appropriate persons." *Thorpe v. Breathitt Cnty. Bd. of Educ.*, 8 F. Supp. 3d 932, 944 (E.D. Ky. 2014) (citing Ky. Rev. Stat. Ann. § 160.370; Ky. Rev. Stat. Ann. § 160.345; *Doe v. Farmer*, 2009 WL 3768906, at *8 (M.D. Tenn. Nov. 9, 2009)). "Actual knowledge of abuse is notice of facts that indicate the likelihood of discrimination." *Id.* (internal citations omitted). Deliberate indifference in the Title IX context exists "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000). In other words, although affirmative action is not required for liability, the Board must have "*intentionally* acted in clear violation of Title IX by remaining deliberately indifferent to known acts of harassment." *Id.* (emphasis added).

There is no evidence the Board had actual notice that Swafford posed a risk of sexual assault to students. Accordingly, the Board did not act with deliberate indifference in this case. First, "[a] school district can only be liable to remedy harassment that it *knew* was occurring." *Thorpe*, 8 F. Supp. 3d at 946 (citing *Patterson v. Hudson Area Schs.*, 551 F.3d 438, 452 (6th Cir. 2009)). As discussed, the facts of this case in no way demonstrate that either Adkins or Gannon knew of any unusual behavior by Swafford prior to Friday, October 14, 2016. (*See generally* DE 132; DE 158).

Gannon first became aware of potentially suspicious activity by Swafford on the afternoon of Friday, October 14, 2016, when he spoke with Andersen about her concerns with regard to Swafford's hosting a party with underage high school students present. (DE 163–1 at 4–5). Gannon may have been negligent in failing to immediately contact Swafford about Andersen's allegations. Gannon did not,

however, intentionally act in a clearly unreasonable manner toward a known act of sexual harassment such that his actions could be construed as deliberate indifference. *See Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000). The undisputed evidence in this case shows that, at the time, Gannon was not aware of any *confirmed* act of *sexual harassment by Swafford*. Moreover, Gannon actively planned to investigate Andersen's by organizing a meeting with her on the following Monday, October 17, 2016. (DE 163–1 at 4–5).

Adkins cannot be said to have acted with deliberate indifference, for all of the same reasons previously discussed. Like Gannon, the uncontested facts show that Adkins was in no way aware of a risk of sexual harassment posed by Swafford prior to K.D.'s assault. (*See generally* DE 158). Further, Adkins took action to ensure that Swafford would be questioned about Andersen's concerns before he even knew of K.D.'s assault. *Id.* at 119. Thus, Adkins' actions cannot be characterized as deliberately indifferent. *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000) (deliberate indifference in the Title IX context exists "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the *known* circumstances").

K.D.'s arguments also fail to the extent she seeks to hold the Board liable based on Cindy Andersen's telephone conversation with Nee Jackson. (DE 163-1 at 5; *see also* DE 162 at 16). During this conversation, Andersen told Jackson of Swafford's planned party, and Jackson told Andersen to contact the police and Principal Gannon, who was Swafford's direct supervisor. *Id.* This is not evidence of deliberate indifference by the Board to a threat of sexual assault posed by Swafford. Rather, even when viewed in a light most favorable to K.D., a Board member's

recommendation that Andersen report her unsubstantiated allegations to the police cannot be characterized as deliberate indifference. *See Vance*, 231 F.3d at 260.

While Swafford's conduct is inexcusable, the law does not permit K.D. to recover from the Board under Title IX on these facts. As explained above, and in the analysis of her Section 1983 claim, K.D. cannot show that the Board acted with deliberate indifference toward a known risk of sexual assault. As such, the Board's motion for summary judgment is granted and K.D.'s Title IX claim is dismissed. *See McCoy v. Bd. of Educ., Columbus City Schs.*, 515 F. App'x 387, 393 (6th Cir. 2013) ("The absence of deliberate indifference pursuant to a Title IX claim is fatal to a companion municipal liability claim made under § 1983."); *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 492 (6th Cir.2006).

### C. Count III: Ky. Rev. Stat. Ann. § 344.555

K.D. seeks relief against the Board pursuant to Ky. Rev. Stat. Ann. § 344.555. Specifically, K.D. alleges that the sexual abuse by Swafford was so severe and objectively offensive that it undermined and detracted from her educational experience sufficient to deny her equal educational opportunities in violation of Kentucky law. (DE 1 at 9 □ 58). Ky. Rev. Stat. Ann. § 344.555 states that no "person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving state financial assistance." The statute "is simply a state law codification of federal Title IX" that "does not differ in substance from Title IX." *Anderson v. Fayette Cnty. Bd. of Educ.*, 2018 WL 3006148, at *2 (Ky. Ct. App. June 15, 2018). Dismissal of K.D.'s "Title IX claims [has] a preclusive effect on the subsequent filing of a claim for

violation of KRS 344.555." *Id.* As such, K.D.'s claim against the Board for violation of Ky. Rev. Stat. Ann. § 344.555 is dismissed.

### D. Count IV: Negligence *Per Se*

K.D. seeks relief against Adkins and Gannon in their individual capacities for negligence *per se* under Ky. Rev. Stat. Ann. § 620.030(1). Here, K.D. alleges that Adkins and Gannon failed to execute their ministerial duty to inform the police that Swafford posed a risk of sexual assault to K.D. (DE 1 at 11 ⬜⬜ 72–74). Ky. Rev. Stat. Ann. § 620.030(1) provides that "[a]ny person who knows or has reasonable cause to believe that a child is dependent, neglected, or abused shall immediately cause an oral or written report to be made to a local law enforcement agency or the Department of Kentucky State Police." A private right of action under the statute is codified by Ky. Rev. Stat. Ann. § 446.070, which provides in relevant part that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation." *Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 817 (E.D. Ky. 2014) ("Kentucky has codified the common law negligence *per se* doctrine and created an avenue by which an individual may seek relief even where a statute does not specifically provide a private remedy.").

In Kentucky, state-government actors enjoy qualified immunity that ensures their "protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). This qualified immunity precludes suits against Board officials and employees for all negligently executed "(1) *discretionary* acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and

judgment; (2) [performed] in good faith; and (3) within the scope of the employee's authority." *Id.* (emphasis added).

The Kentucky Supreme Court has determined that Ky. Rev. Stat. Ann. § 620.030(1) creates both a discretionary and ministerial duty for school officials. *Ritchie v. Turner*, — S.W.3d —, 2018 WL 5732836, at *8–*11 (Ky. Nov. 1, 2018). The duty to investigate is ministerial. *Id.* The determination of "whether reasonable cause exists to believe abuse is occurring or has occurred, on the other hand, requires personal judgment, a discretionary function." *Id.* "[U]nder the statute, no further action is required when one investigates and concludes there is no reasonable cause to believe that a child is being or has been abused." *Id.* Ky. Rev. Stat. Ann. §620.030(1)'s "reporting requirement involves a discretionary action when a school official or other individual is *determining* whether there is 'reasonable cause to believe' that a child has been or is being abused. Disagreement as to the determination reached by the school officials in the good faith exercise of their judgment will not expose the school officials to personal liability." *Ritchie*, 2018 WL 5732836, at *11 (emphasis added).

Here, Adkins is entitled to state-law qualified immunity, precluding K.D.'s negligence *per se* claim against him. The uncontested facts show that Adkins was completely unaware of a risk of sexual harassment or abuse posed by Swafford before K.D. was assaulted. (*See generally* DE 158). Further, Adkins was in the process of determining the legitimacy of Andersen's allegations by making steps to investigate and question Swafford, even before he knew that K.D. had been assaulted. *Id.* at 119; *Ritchie*, 2018 WL 5732836, at *11 (Ky. Rev. Stat. Ann. §620.030(1)'s "reporting requirement involves a discretionary action when a school

official or other individual is *determining* whether there is 'reasonable cause to believe' that a child has been or is being abused.") (emphasis added). That K.D. was assaulted before the completion of this investigation is not grounds for liability. Even if Adkins were negligent in failing to immediately contact Swafford, his good-faith investigation of Swafford—where there was no prior knowledge of sexual assault by Swafford of other students—entitles him to qualified immunity on these facts. Adkins was engaged in a discretionary function. *Ritchie*, 2018 WL 5732836, at *14 ("While a duty to investigate potential abuse may be owed to students generally (either for purposes of mandatory reporting or to make an employment decision) that, again, is a predominantly discretionary action, not a ministerial act."); *see also Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

For the same reasons, Gannon is entitled to state-law qualified immunity, precluding K.D.'s negligence *per se* claim against him as well. Gannon first became aware of potentially suspicious activity by Swafford on the afternoon of Friday, October 14, 2016, when he spoke with Andersen. (DE 163–1 at 4–5). At that time, Andersen informed Gannon of Swafford's planned party and accused him of previously providing alcohol and marijuana to her daughters. (DE 163-1 at 3–5). While Gannon may have been unwise in not immediately contacting Swafford about Andersen's concerns, he did take good-faith steps within his authority to begin determining the legitimacy of Andersen's allegations and concerns. *Id. Richie* provides that this is a discretionary act to which state-law qualified immunity applies. *Ritchie*, 2018 WL 5732836, at *11, *14; *see also Yanero*, 65 S.W.3d at 522. On these facts, where there was no confirmed prior act of sexual assault by Swafford, and Gannon was making good-faith efforts to investigate the allegations against Swafford, Gannon is entitled to qualified immunity under Kentucky law.

*Ritchie*, 2018 WL 5732836, at *10–*11 ("[W]ithout one having actual or personal knowledge of abuse, the ultimate determination of whether reasonable cause exists involves reasonable inquiry into the facts, weighing credibility of witnesses, and then using judgment and experience to reach a decision. . . . [T]hese actions [are] clearly discretionary in nature." (citing *Turner v. Nelson*, 342 S.W.3d 866, 878 (Ky. 2011))); *see also Yanero*, 65 S.W.3d at 522 (Ky. 2001). "Disagreement as to the determination reached by the school officials in the good faith exercise of their judgment will not expose the school officials to personal liability." *Id.* at *11 Accordingly, K.D.'s negligence *per se* claims against Adkins and Gannon are dismissed.

### E. Count V: Negligence

K.D. alleges that Adkins and Gannon were negligent in failing to act to protect K.D. and other students from sexual abuse by Swafford. (DE 1 at 12 ⬜⬜ 76–85 (citing *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 148 (Ky. 2003)). For the same reasons outlined above in the analysis of K.D.'s negligence *per se* claim, Adkins and Gannon are entitled to qualified immunity. *Ritchie*, 2018 WL 5732836, at *14 ("[T]he school officials had a common law duty to use reasonable care in making their decision regarding disciplining, dismissing or retaining [the alleged assailant]. That decision is inherently a discretionary function." (citing *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 732 (Ky. 2009));. As such, K.D.'s negligence claim against Adkins and Gannon is dismissed.

### IV. ANALYSIS OF MOTION TO DISMISS

To the extent all other defendants are dismissed from this case, Swafford has filed a motion to dismiss all claims against him due to lack of personal jurisdiction

or, in the alternative, *forum non conveniens*. (DE 165). To the extent Swafford filed his motion arguing the Court lacks personal jurisdiction over him, he is incorrect. K.D. has filed two claims against Swafford: (1) a Section 1983 claim and (2) a common law battery claim for sexual assault. (DE 1 at 6, 13). Swafford has not challenged the merits of these claims. In addition, the Court has federal question jurisdiction over the Section 1983 claim, and the Court has personal jurisdiction over Swafford due to his many contacts in the Eastern District of Kentucky. The Court also declines to transfer venue pursuant to *forum non conveniens*. Many factors, including the location and availability of witnesses, weigh in favor of holding this matter in the Eastern District of Kentucky. As such, Swafford's motion to dismiss, (DE 165), is denied.

As noted, Swafford does not allege a substantive basis to dismiss the claims against him. (DE 165). The Court, however, cannot permit the Section 1983 claim against Swafford to proceed. "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person *acting under color of state law*." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir.1992) (emphasis added); *see also Azar v. Conley*, 456 F.2d 1382, 1388 (6th Cir. 1972) ("It is, of course, well settled that one may not recover under Section 1983 on the basis of acts not done 'under color of law.'"). Here, it is undisputed that Swafford sexually assaulted K.D. at a private party at his residence. Swafford was a Board employee, but he was not acting within that capacity or under color of law when he sexually assaulted K.D. off school property. (*See generally* DE 1). In addition, K.D. does not even allege that Swafford was acting under color of law when he sexually assaulted her. *See id.* at 6 ▢ 37–7 ▢

46. "[T]he under-color-of-state-law element of § 1983 excludes from its reach "'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (itself quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948))). Accordingly, K.D.'s Section 1983 claim against Swafford is dismissed.

## V. ANALYSIS OF MOTION FOR SANCTIONS

K.D. has moved to sanction Defendant Gannon for his alleged inclusion of false affidavits in support of his motion for summary judgment. K.D. believes that these affidavits portray her counsel and support staff as having engaged in unethical behavior under the Federal Rules of Civil Procedure and Kentucky's Supreme Court Rules. The Court has fully reviewed the filings, affidavits, and motions. The Court, however, finds that K.D. has provided inadequate reasons and proof to support sanctioning Gannon as having included false affidavits under the federal rules. As such, K.D.'s motion for sanctions, (DE 148), is denied.

## VI. CONCLUSION

The Court has great sympathy for the suffering of K.D. The Court, however, is obliged to follow the law and permit recovery exclusively from and against legally culpable parties. Here, K.D. has not demonstrated factual or legal bases to hold the Pike County Board of Education, Superintendent Reed Adkins, or Principal Mark Gannon liable for the criminal acts of Jerry Swafford. Accordingly,

**IT IS ORDERED** as follows:

1. Defendant the Pike County Board of Education's motion for summary judgment, (DE 164), is **GRANTED**;

2. Defendant Reed Adkins' motion for summary judgment, (DE 163), is **GRANTED**;

3. Defendant Mark Gannon's motion for summary judgment, (DE 143), is **GRANTED**;

4. Defendant Swafford's motion to dismiss, (DE 165), is **DENIED**;

5. K.D.'s motion for sanctions, (DE 148), is **DENIED**;

6. **ALL CLAIMS** against the Pike County Board of Education, Reed Adkins, and Mark Gannon, are **DISMISSED WITH PREJUDICE**;

7. K.D.'s Section 1983 claim against Swafford is **DISMISSED WITH PREJUDICE**; and

8. The jury trial scheduled for this matter, (DE 27), is **RESCHEDULED** to commence on **March 18, 2019 at 1:00 p.m. in PIKEVILLE**.

As a result of this Memorandum Opinion and Order, K.D.'s Civil Battery claim proceeds against Defendant Swafford.

Dated November 9, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY